# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 8, 2013 Session

## STATE OF TENNESSEE v. TERESA TURNER

**Appeal from the Circuit Court for White County**
**No. CR4933      David A. Patterson, Judge**

---

**No. M2013-00827-CCA-R3-CD - Filed January 29, 2014**

---

The Defendant, Teresa Turner, pled guilty to reckless homicide, a Class D felony. The trial court sentenced the Defendant as a standard offender to three years with six months of the sentence to be served in confinement and the remainder of the sentence on supervised probation. The Defendant appeals, claiming that the trial court abused its discretion when it: (1) denied judicial diversion; (2) misapplied enhancement factors; and (3) ordered a sentence involving split confinement. After a thorough review of the record and applicable law, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH, and ROGER A. PAGE, JJ., joined.

Gayla C. Hendrix, Smithville, Tennessee, for the appellant, Teresa Lynn Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon and Leslie Price, Senior Counsels; Randy York, District Attorney General; and Phillip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from a traffic accident resulting in the death of the victim and serious injuries to the three other occupants of the vehicle. For her role in these events, a White County grand jury indicted the Defendant for one count of vehicular homicide and three counts of aggravated assault.

At the guilty plea submission hearing, the State offered the following facts as the basis for the Defendant's guilty plea:

[O]n July 23rd, 2010, [the Defendant] was operating a motor vehicle in White County, Tennessee, at which time, she crossed the center line and did strike a vehicle with [the victim] in the car. [The victim] was air-lifted out of the scene to several different hospitals in the area, eventually passing away approximately 23 days later after being placed in a rehabilitation facility.

If the case were to be tried, there would be a TBI agent that would testify to the contents of [the Defendant's] blood. . . . Which was negative for alcohol, and positive for Desipramine, and Mirtazapine, Citalopram, and Oxycodone, and Alprazolam, would be, under the TBI agent's testimony, sufficient to impair an individual's ability to safely operate a motor vehicle, and the State would suggest that her impairment is the proximate cause of the death of [the victim], some 23 days later. And that testimony would also come from the medical examiner's office for the state of Tennessee.

The Defendant pled guilty to reckless homicide, a Class D felony, and the State dismissed the remaining counts against the Defendant.

At a subsequent sentencing hearing, the parties presented the following evidence: Teresa Autry, a Tennessee Department of Correction probation officer, testified that she prepared the presentence report in this case. Ms. Autry identified her report, and the trial court entered the report into evidence without objection. During the course of the preparation of the presentence report, Ms. Autry found that the Defendant was unemployed and suffered from several medical conditions, which included: "COPD," degenerative disc disease, "problems" with her neck, "lower back pain," "chronic bronchitis," and a left hip replacement. Ms. Autry reported that the Defendant did not have a criminal history.

William Morgan, a Tennessee Highway Patrol trooper, testified that, on July 23, 2010, he investigated a car crash involving the Defendant. Trooper Morgan said that other than the Defendant, there were four individuals involved in the crash. He said that all four were injured and that one of the four individuals, the victim, subsequently died from his injuries.

Trooper Morgan testified that the Defendant, who was driving a green truck, crossed over into the oncoming lane of traffic and ran into a vehicle head-on. Based upon the circumstances of the crash, Trooper Morgan requested that a toxicology kit be performed.

On cross-examination, Trooper Morgan testified that the toxicology report indicated the presence of Desipramine, Mirtazapine, Citalopram, Oxycodone, and Alprazolam in the Defendant's system. Trooper Morgan stated that he was at the time unaware that the Defendant was prescribed each of these medications. Trooper Morgan explained that "therapeutic levels" can vary between individuals; however, the Tennessee Bureau of Investigation ("TBI") references the Winnick Chemical Chart to analyze therapeutic levels. According to the TBI report, the amount of Oxycodone in the Defendant's system was above therapeutic levels in relation to the Winnick Chemical Chart. The Citalopram and the Alprazolam were within therapeutic levels according to the chart, and the remaining two medications did not indicate therapeutic levels on the TBI report.

The Defendant testified that the medications listed on the toxicology report were medications prescribed by her physician. She stated that she had been taking the medications for "several years" as directed by her physician. She denied any abuse or use of the medications other than as prescribed. The Defendant stated that her physician had never advised her not to drive while using the medications.

The Defendant testified about the events leading up to the car crash, saying that she was driving home from the Wilmar grocery store. She had bought a soda and snack cakes. As she was driving, she "dropped [her] soda or something rolled off in the floor," and she reached down to pick it up. She stated, "I guess I just wasn't paying enough attention, and when I looked up I was crossing the line and there was a vehicle." She said that she attempted to swerve to avoid the collision but that it was "too late to move." She said she remembered nothing after the impact.

When the Defendant's attorney asked her if she had reached to pick up the soda that had fallen to the floor, the Defendant responded, "I'm assuming, yes." The Defendant stated that she did not know the occupants of the vehicle with which she collided, even though they were her "husband's family." She said that she did not know at the time of the accident but that she later learned that the other car was driving the victim home from the hospital. She explained that the victim was "really sick." She said that he was "terminally ill" and that "they couldn't do anything else for him, so he was going home."

The Defendant testified that she had never "been in any trouble with the law before." She testified that, through this experience, she has learned "to not take your medication and drive a vehicle." She stated that she had not driven since the car crash and did not intend to drive "anymore."

On cross-examination, the Defendant testified that all four occupants of the other vehicle were injured as a result of the car crash. She further agreed that she intentionally

reached down to pick something up off the floor of the car, taking her eyes off the road. She agreed that the medical examiner testified that the victim's cause of death was "multiple blunt force trauma."

On redirect examination, the Defendant testified that the other persons injured in the car crash were compensated by the Defendant's insurance company for their expenses and injuries.

B.K. Luna, the victim's brother, testified that the victim was approximately seventy-two at the time of his death. He said that the victim had begun to lose his eyesight and "his kidneys" started acting up again. According to Mr. Luna, the victim had been on dialysis for eight years in Cookeville, Tennessee, before relocating to Nashville, Tennessee. His new physician in Nashville discontinued dialysis four years before the accident. Mr. Luna said that the victim had been in the hospital for "a couple of weeks" and was on his way home from the hospital when the car crash occurred.

After hearing the evidence, the trial court sentenced the Defendant as a Standard Range I offender to three years. The trial court denied the Defendant's request for judicial diversion. The trial court then considered the manner of service of the sentence and imposed a sentence of split confinement, ordering the Defendant to serve six months in jail, with the remainder of the sentence on supervised probation. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues that the trial court erred when it sentenced her to serve a sentence involving split confinement. She specifically attacks the trial court's: (1) denial of judicial diversion; (2) consideration of enhancement factors untimely filed by the State; (3) application of enhancement factor (6), that the injury to the victim was particularly great; (4) application of enhancement factor (3), that the offense involved more than one victim; and (5) denial of a full probation sentence. The State responds that the trial court did not abuse its discretion when ordering a three-year sentence involving split confinement.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"

*State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709–10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence and consecutive sentencing. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). In *State v. Pollard*, the Court held, "the appropriate standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness." We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

## A. Denial of Judicial Diversion

The Defendant argues that the trial court erred when it denied her request for judicial diversion. The State responds that the trial court acted within its discretion when it denied the Defendant's request.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2010). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i) (2010). Eligibility does not automatically entitle the Defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). "[W]hether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court." *Id.*

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *State v. Bonestel*, 871 S.W.2d at 168. The trial court may consider the following additional factors: "'[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting *State v. Markham*, 755 S.W.2d 850, 852–53 (Tenn. Crim. App. 1988) (citations omitted)). A trial court must weigh all of the required factors in determining whether to grant judicial diversion. *Electroplating, Inc.*, 990 S.W.2d at 229 (citing *Bonestel*, 871 S.W.2d at 168). Additionally, "a trial court should not deny judicial diversion without explaining both

the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Id*. (citing *Bonestal*, 871 S.W.2d at 168).

When a defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *Electroplating, Inc.*, 990 S.W.2d at 229 (citing *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983)); *see also State v. Patel*, M2012-02130-CCA-R3-CD, 2013 WL 3486944, (Tenn. Crim. App. July 10, 2013) *no Tenn. R. App. P. 11 application filed* (concurring, Tipton, P.J. and Witt, J.). We must conclude that "no substantial evidence exists to support the ruling of the trial court" in order to grant the Defendant relief. *Cutshaw*, 967 S.W.2d at 344. Lastly, it is well-settled that "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases[,] but they are more stringently applied to diversion applicants." *State v. Holland*, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983).

In considering judicial diversion, the trial court made the following findings:

[T]he interest of the public [is] not well served by judicial diversion being granted when one is killed through the actions of another, such as this offense shows. And that the circumstances of the offense are such that judicial diversion is not appropriate in this case.

I look to the deterrence value of others who might be [disposed], [pre-disposed] or might commit such an offense to give a clear understanding that when life is taken through the activities such as this, that a case should not be dismissed, but that there should be a conviction for the case and a sentence which is appropriate.

It appears from the record before us that the trial court denied judicial diversion solely because a death was involved. A victim's death is involved in every case of reckless homicide, but our legislature has not excluded reckless homicide from offenses for which judicial diversion is a sentencing option. *See* T.C.A. § 40-35-313. Furthermore, the trial court did not review all of the relevant factors and explain "both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Electroplating, Inc.*, 990 S.W.2d at 229. In our view, the trial court's denial of judicial diversion based solely upon the death of the victim is an abuse of discretion. Therefore, we reverse the trial court's judgment and remand the case to the trial court for reconsideration.

In case of further appellate review we now consider each of the Defendant's remaining issues.

## B. Application of Enhancement Factors

The Defendant asserts that the trial court erred when it considered the State's untimely filed enhancement factors, and it erred by applying enhancement factor (3), that the offense involved more than one victim, and enhancement factor (6), that the injuries inflicted were particularly great. The State responds that because the Defendant was a sentenced as a standard offender, the State was not required to file a notice of enhancement factors ten days before acceptance of the guilty plea pursuant to Tennessee Code Annotated section 40-35-202(a). The State also asserts that the trial court properly considered and applied enhancement factors in this case. We agree with the State.

The Defendant argues that the State's Notice of Enhancement Factors was untimely filed and, therefore, should not have been considered by the trial court in sentencing. The Defendant relies on Tennessee Rule of Criminal Procedure 12.3 (a) and Tennessee Code Annotated section 40-35-202(a). Tennessee Rule of Criminal Procedure 12.3 (a) provides:

> If the district attorney general intends to seek an enhanced punishment as a *multiple, persistent or career* offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial.

(Emphasis added). Tennessee Code Annotated section 40-35-202(a) provides, in relevant part:

> If the district attorney general believes that a defendant should be sentenced as a *multiple, persistent or career* offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of the guilty plea.

(Emphasis added). The record reveals that the Defendant was not sentenced as a multiple, persistent or career offender but as a standard offender. Therefore the rule and statute upon which the Defendant relies is inapplicable in this case. The trial court correctly considered enhancement and mitigating factors in this case.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2012).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114 (2012); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

As to the Defendant's contention that the trial court in its application of enhancement factor (3) and enhancement factor (6),we consider each factor in turn.

### 1. Enhancement Factor (3)

The Defendant argues that the trial incorrectly applied enhancement factor (3), that the offense involved more than one victim. The Defendant relies upon *State v. Imfeld*, 70 S.W.3d 698 (Tenn. 2002) for his assertion that the trial court could not find that the reckless homicide involved more than one victim. The State responds that the Defendant has misapplied *Imfeld* to the facts in this case. We agree with the Defendant.

In *Imfeld*, the Defendant struck the rear of van which contained a family of eight. *Id.* at 702. The Defendant pled guilty to DUI and five counts of aggravated assault. *Id.* There were no charges or guilty pleas resulting from the injuries of two of the occupants of the van. *Id.* At sentencing the trial court enhanced the Defendant's sentence based upon the two occupants of the van for which no charges were brought. This Court affirmed the application of enhancement factor (3), however, our Supreme Court concluded that there cannot be multiple victims for any one offense committed against a specific, named person. *Id.* at 706. In *Imfeld*, our Supreme Court addressed a case involving aggravated assault; however, we believe the reasoning to be also applicable in this case. Therefore, we conclude that the trial

court abused its discretion when it applied enhancement factor (3) , that the offense involved more than one victim, in this case. In so doing, we note that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. *Bise*, 380 S.W.3d 682, 702.

## 2. Enhancement Factor (6)

The Defendant asserts that the trial court incorrectly applied enhancement factor (6), the personal injuries inflicted were particularly great." The Defendant argues that because serious bodily injury is an element of reckless homicide, the trial court may not consider this enhancement factor. The State responds that the trial court was not considering the death of the victim but on the three other persons in the vehicle who were injured. We agree with the State.

The trial court considered the testimony that the three other persons in the vehicle with the victim suffered "particularly great" injury at the hands of the victim. Based upon this, we can not conclude that the trial court acted outside its discretion when it considered the totality of the circumstances surrounding the incident. *Bise*, 380 S.W.3d at 707, 709-10.

Accordingly, we conclude that there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, to uphold the trial court's within range sentence. The Defendant is not entitled to relief.

## C. Full Probation

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(2010). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for

-10-

alternative sentencing. T.C.A. § 40-35-102(6) (2010). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (2010).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2010).

In this case, the trial court properly considered the relevant sentencing factors. The trial court concluded that the Defendant did not have a long history of criminal conduct or that less restrictive measures than confinement had frequently or recently been applied. The trial court did, however, deny an alternative sentence based upon the seriousness of the offense. The evidence shows that the Defendant, while on medication, was driving a vehicle. As she was driving down the road she took her eyes off the road and focused on the floorboard of the vehicle while driving her car into oncoming traffic. The Defendant hit a vehicle with four passengers head-on. Three of the passengers suffered "particularly great" injuries and the fourth victim died as a result of "multiple blunt force trauma" sustained during this accident.

In sentencing matters we are to afford the trial court a presumption of reasonableness. In so doing, we can not conclude in this case that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances. The Defendant injured three people and killed the fourth due to her conduct. Accordingly, the trial court did not abuse its discretion when it denied alternative sentencing. The Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing and the record as a whole, we reverse the judgment of the trial court and remand to the trial court for reconsideration.

_____
ROBERT W. WEDEMEYER, JUDGE